RECEIPT NUMBER
514961

ORIGINAL



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY ENGLAR and CAROL DIEHL,

Plaintiffs,

vs.

**41B DISTRICT COURT** *for Clinton Township, Mt. Clemens, and Harrison Township;* **CHIEF JUDGE LINDA DAVIS,** *of the 41B District Court, individually and in her official capacity; and* **CHARTER TOWNSHIP OF CLINTON,** *a municipal corporation,*

Defendants.

**DEMAND FOR JURY TRIAL**

JUDGE : Rosen, Gerald E.
DECK : S. Division Civil Deck
DATE : 10/12/2004 @ 11:16:24
CASE NUMBER : 2:04CV73977
CMP NANCY ENGLAR ET AL V 41B
DISTR CT ET AL (DQH)

MAGISTRATE JUDGE DONALD A. SCHEER

---

**DEBORAH L. GORDON, PLC.**
**Deborah L. Gordon (P27058)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 275
Bloomfield Hills, Michigan 48304
Telephone 248 258 2500

U.S. DIST. COURT CLERK
EAST. DIST. MICH
DETROIT

'04 OCT 12 AM :23

FILED

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs **Nancy Englar** and **Carol Diehl**, by their attorneys **Deborah L. Gordon, PLC** complain against Defendants as follows:

### Jurisdiction and Parties

**1.**     This is an action for deprivation of Plaintiffs' rights under the United States Constitution, for violation of Michigan's Whistleblower Protection Act, and for tortious interference, defamation, and wrongful discharge under Michigan common law, arising out of Plaintiffs' employment relationship with Defendants **41B District Court, Charter**

**Township of Clinton,** and **Chief Judge Linda Davis.**

2.  This is a companion case to a case against the same Defendants, and based on the same occurrence, which is currently pending in United States District Court, Eastern District of Michigan, Case No. 2:04 CV 73957, assigned to Judge Paul D. Borman.

3.  This Court has jurisdiction of Plaintiffs' constitutional claims under and pursuant to 42 USC §1983, 28 USC §1343 and 28 USC §1331. Venue lies in the Eastern District of Michigan pursuant to 28 USC 1391(b).

4.  This Court has supplemental jurisdiction of Plaintiffs' state law claims pursuant to 28 USC §1367.

5.  Plaintiff **Nancy Englar** (hereafter "Plaintiff **Englar**") is a citizen of the United States and a resident of Clinton Township, Michigan, within the Eastern District of Michigan.

6.  Plaintiff **Carol Diehl** (hereafter "Plaintiff **Diehl**") is a citizen of the United States and a resident of Clinton Township, Michigan, within the Eastern District of Michigan.

7.  Defendant **41B District Court** is organized under the laws of the State of Michigan, and is located within the Eastern District of Michigan.

8.  Defendant **Charter Township of Clinton** (hereafter "Defendant **Clinton Township**") is a municipal corporation organized under the laws of the State of Michigan and is located within the Eastern District of Michigan.

9.  Defendant **Clinton Township** is the "local funding unit" for Defendant **41B District Court,** Clinton Township division.

10. Defendant **Judge Linda Davis** (hereafter "Defendant **Davis**") is and was at all

2

relevant times Chief Judge of Defendant **41B District Court** which includes the Clinton Township Division where Plaintiffs **Englar** and **Diehl** were employed. Upon information and belief, Defendant **Davis** resides within the Eastern District of Michigan.

11. Plaintiffs sue Defendant **Davis** in both her individual and official capacities.

12. At all times material to this Complaint, Defendant **Davis** acted under color of law, meaning under color of the statutes, codes, ordinances, regulations, policies, customs and usages of the State of Michigan and/or 41B District Court and/or Clinton Township.

13. The events giving rise to this cause occurred within the Eastern District of Michigan.

## *Background Facts*

14. Plaintiff **Englar** became employed at Defendant **41B District Court**, Clinton Township division, in December, 1981, as a landlord-tenant clerk. At the time of her termination in July, 2004, Plaintiff worked as chief probation officer in the probation department.

15. Plaintiff **Diehl** became employed at Defendant **41B District Court**, Clinton Township division, in January, 1990, as a cashier/account clerk, a position she held at the time of her termination in July, 2004.

16. Throughout the course of their employment with Defendants, Plaintiffs have performed their job duties in a manner that was satisfactory or better.

17. Defendant **Davis** is Chief Judge for Defendant **41B District Court** which includes two divisions and/or locations - Mt. Clemens and Clinton Township.

18. Defendant **Davis**, along with Judge John Foster, preside at Defendant **41B District Court's** Mt. Clemens division or location, while Judge William Cannon presides

at its Clinton Township division.

19. Defendant **Davis** has for a number of years been at the forefront of efforts to merge Defendant **41B District Court's** Mt. Clemens division with its Clinton Township division.

20. Upon information and belief, Judge Cannon has objected to these merger efforts, and in particular Defendant **Davis's** timetable for completing the merger.

21. Upon information and belief, the aforementioned merger effort would personally and politically benefit Defendant **Davis**.

22. At all times material to this Complaint, Plaintiffs had close associations with Judge Cannon and his wife and with each other.

23. Employees at Defendant **41B District Court's** Mt. Clemens division were at all relevant times unionized, while employees at the Clinton Township division were not unionized.

24. During the time period when discussions and meetings regarding the proposed merger of Defendant **41B District Court's** Mt. Clemens and Clinton Township divisions were taking place, Defendant **Davis** made statements that she did not want employees at the Clinton Township division to form a union and other anti-union statements.

25. On June 28, 2004, Plaintiffs attended a meeting at the home of Plaintiff **Englar**, which was also attended by other employees of Defendant **41B District Court's** Clinton Township division and representatives of AFSCME, a union which represents public employees. The purpose of the meeting was to determine whether there was sufficient interest in forming a union at the Clinton Township division.

26. At the aforementioned meeting, Plaintiff **Englar** agreed to be AFSCME's

4

"contact person" in efforts to organize a union among Defendant **41B District Court's** Clinton Township division employees.

27. On June 28, 2004, Defendant **Davis** held a meeting with staff at Defendant **41B District Court**, including Plaintiffs **Englar** and **Diehl**, and advised them that government officials would be conducting a "management oversight" review, at which time staff members would be interviewed.

28. At the aforementioned meeting, Plaintiffs and the other staff members were advised that the court was "extremely overstaffed" by 10 or 15 people, but that no one would lose their jobs if they were "honest" during the interviews.

29. On July 6, 2004, Plaintiff **Englar** was interviewed as part of the "management oversight" investigation.

30. At the July 6 interview, Plaintiff **Englar** was asked questions about which she had no personal knowledge, including questions about possible wrongdoing by court personnel.

31. Plaintiff **Englar** answered truthfully during the July 6 interview, and despite numerous leading questions, refused to provide false or misleading information on the subject of possible wrongdoing by court personnel.

32. On July 9 and July 15, 2004, Plaintiff **Diehl** was interviewed as part of the "management oversight" investigation.

33. At the July 9 and July 15 interviews, Plaintiff **Diehl** was asked questions about which she had no personal knowledge, including questions about possible wrongdoing by court personnel.

34. Plaintiff **Diehl** answered truthfully during the July 9and July 15 interviews, and

5

despite numerous leading questions, refused to provide false or misleading information on the subject of possible wrongdoing by court personnel.

35. On July 15, 2004, Defendant **Davis** summarily terminated Plaintiff **Englar's** employment without notice, warning, a hearing, or any disciplinary steps.

36. On July 15, 2004, Defendant **Davis** summarily terminated Plaintiff **Diehl's** employment without notice, warning, a hearing, or any disciplinary steps.

37. On July 15, 2004, Defendant **Davis** also summarily terminated the employment of Patricia Barachkov, a co-worker and friend of Plaintiff **Englar** and Plaintiff **Diehl,** who had also attended the June 28, 2004 union organizing meeting with AFSCME at Plaintiff **Englar's** home.

38. Barachkov, like Plaintiffs **Englar** and **Diehl,** also had close associations with Judge Cannon and his wife.

39. Plaintiffs **Englar** and **Diehl** were told by Defendant **Davis** that their terminations were related to their "management oversight" interviews.

40. Patricia Barachkov was likewise told that her termination was related to her "management oversight" interview.

41. Plaintiff **Englar** and **Diehl's** terminations were in fact motivated by their close association with Judge Cannon and his wife, their truthful testimony during the "management oversight" investigation, their failure and refusal to fabricate information which would implicate court employees in wrongdoing during that investigation, and their association with union officials and others who were working to organize a union for Plaintiffs and their co-workers.

42. Plaintiff **Englar** and **Diehl's** terminations were further motivated by Defendant

6

**Davis's** desire to advance her political and personal agenda.

43. On or about July 15, 2004, Defendant **Davis** announced at a meeting of court employees that Plaintiffs **Englar, Diehl**, and Patricia Barachkov had been terminated on July 15, 2004 for "lying" in their management oversight interviews.

44. In an interview with the Detroit News, Defendant **Davis** stated that Plaintiffs **Englar, Diehl**, and Patricia Barachkov had been terminated on July 15, 2004 for lying in their management oversight investigation interviews.

45. The aforementioned statement by Defendant **Davis** appeared in the Detroit News in July, 2004.

46. Plaintiffs **Englar** and **Diehl** have, to date, never been advised as to what they allegedly "lied" about during their management oversight interviews.

47. Plaintiffs **Englar** and **Diehl's** personnel files, which they requested and received from Defendants following their terminations, contain no documentation whatsoever concerning their management oversight interview, what they allegedly "lied" about during their management oversight interview, any performance deficiencies or concerns, or any other documentation related to or supporting a termination for cause.

## COUNT I
### 42 USC § 1983 - Freedom of Speech and Association

48. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 47 as though set forth in full herein.

49. As Chief Judge of **41B District Court**, Defendant **Davis's** acts represent official policy of Defendant **41B District Court** and Defendant **Clinton Township** and are attributable to Defendants **41B District Court** and Defendant **Clinton Township**.

50. Acting under color of law, Defendant **Davis** promulgated and carried out the official policies, orders and directives described above intentionally and deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of Plaintiffs, including the fundamental right to freedom of speech and freedom of association arising out of the First Amendment, and other applicable provisions of the United States Constitution.

51. By promulgating and carrying out the policies, orders and directives described above, Defendant **Davis** has unlawfully violated Plaintiffs' aforesaid constitutional rights.

52. Plaintiffs' aforementioned truthful testimony in a government investigation, their failure and refusal to provide false or misleading information during said investigation, their association with Judge Cannon and his wife, their activities with regard to union organizing efforts and their association with persons involved in union organizing efforts are constitutionally protected activities touching on matters of public concern.

53. At all times material hereto, it was clearly established that retaliation against a public employee for testifying truthfully and refusing to provide false or misleading information in a government investigation was constitutionally impermissible.

54. At all times material hereto, it was clearly established that retaliation against a public employee by a public official for associating with certain members of the community was constitutionally impermissible.

55. At all times material hereto, it was clearly established that retaliation against a public employee by a public official for engaging in union organizing efforts and associating with persons engaged in union organizing efforts was constitutionally impermissible.

56. At all times material hereto, Plaintiffs had a clearly established right of which a reasonable public official would have known, to testify truthfully and refuse to provide false or misleading information in a government investigation without retaliation.

57. At all times material hereto, Plaintiffs had a clearly established right of which a reasonable government official would have known, to associate with certain members of the community without retaliation.

58. At all times material hereto, Plaintiffs had a clearly established right of which a reasonable government official would have known, to engage in union organizing efforts and to associate with persons engaged in union organizing efforts.

59. As a direct and proximate result of Defendants' wrongdoing, Plaintiffs have each sustained loss of earnings and earning capacity, past and future lost earnings, the value of fringe and pension benefits, loss of job and career opportunities, damage to their good names and reputations in the community, mental and emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to pursue employment of choice.

## COUNT II
## 42 USC § 1983 - Due Process

60. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 59 as though set forth in full herein.

61. As Chief Judge of **41B District Court**, Defendant **Davis's** acts represent official policy of Defendant **41B District Court** and Defendant **Clinton Township** and are attributable to Defendants **41B District Court** and Defendant **Clinton Township**.

62. Acting under color of law, Defendant **Davis** promulgated and carried out the

9

official policies, orders and directives described above intentionally and deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of the Plaintiffs, including the fundamental right to due process of law and other applicable provisions of the United States Constitution.

63. By promulgating and carrying out the policies, orders and directives described above, Defendant **Davis** has unlawfully violated Plaintiffs' constitutional rights.

64. Plaintiffs enjoyed a constitutionally protected property interest in continued employment.

65. On July 15, 2004, acting under color of law and pursuant to her authority as Chief Judge, Defendant **Davis** informed Plaintiffs that their employment had been terminated, effective immediately.

66. Before depriving Plaintiffs of their constitutionally protected property interest in continued employment, Defendants did not conduct a pretermination hearing or otherwise afford Plaintiffs notice of the grounds for their termination or a meaningful opportunity to respond.

67. Defendants' actions in depriving Plaintiffs of their constitutionally protected property interest in continued employment, absent a pre-termination hearing or other notice of the grounds for their terminations and an opportunity to respond, abridge their right to due process of law in violation of the Fourteenth Amendment to the United States Constitution.

68. Plaintiffs' reputation and their opportunity to pursue future employment constitute a constitutionally protected liberty interest.

69. At or around the time of Plaintiffs' termination, Defendant **Davis** and/or other

agents of Defendant **41B District Court** and **Clinton Township** publicly leveled charges and claims against Plaintiffs which stigmatized Plaintiffs and severely damaged Plaintiffs' opportunity for future employment.

70. Said claims and charges were false.

71. Said claims and charges were widely publicized.

72. Said claims and charges were implicated in the dismissal process.

73. Plaintiffs were denied a meaningful name clearing hearing prior to their termination.

74. Defendants' actions in depriving Plaintiffs of their constitutionally protected liberty interest in their reputation and their opportunity to pursue future employment by terminating them without a name clearing hearing or other notice of the grounds for their termination and an opportunity to respond abridge their right to due process of law in violation of the Fourteenth Amendment to the United States Constitution.

75. At all times material hereto, Plaintiffs had a clearly established right to due process of law of which a reasonable public official would have known.

76. As a direct and proximate result of Defendants' wrongdoing, Plaintiffs have sustained loss of earnings and earning capacity, past and future lost earnings, the value of fringe and pension benefits, loss of job and career opportunities, damage to their good names and reputations in the community, mental and emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to pursue employment of choice.

## COUNT III
## Wrongful Discharge-Breach of Implied
## Contract and Legitimate Expectations

77.   Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 76 as though set forth in full herein.

78.   Defendant **Clinton Township** at all times material hereto, maintained a written disciplinary action policy and/or procedure requiring "just cause" for termination, and a practice of not terminating employees without good or just cause.

79.   The aforementioned policy and/or procedure and/or practice applied to employees of Defendant **Clinton Township** and Defendant **41B District Court**, Clinton Township division, including Plaintiffs.

80.   As Chief Judge of Defendant **41B District Court**, Defendant **Davis** by law was required to follow, with respect to court employees at the Clinton Township division, including Plaintiffs, personnel policies consistent with Defendant **Clinton Township's** written employment policies, including the aforementioned disciplinary action policy and/or procedure and/or practice of Defendant **Clinton Township**.

81.   Defendant **Clinton Township's** written disciplinary action policy and/or procedure requires that employees be given progressive discipline including an oral warning, written warning, one-day suspension and five-day suspension prior to discharge.

82.   Defendant **Clinton Township's** written disciplinary action policy and/or procedure and/or practice requires that employees not be discharged without good or just cause.

83.   Throughout the course of their employment with Defendants, Plaintiffs relied on the policies, practices and procedures of Defendants, which provided that employees

would not be terminated without good or just cause.

84. The aforementioned policies, practices and procedures constituted an implied contract of employment between Plaintiffs and Defendants.

85. Defendants' policies, procedures, and practices created a reasonable expectation of continued employment in Plaintiffs and other employees of Defendants.

86. Contrary to Defendants' policies, practices and procedures, Plaintiffs were terminated on July 15, 2004, without notice, warning, or cause.

87. As a direct and proximate result of Defendants' wrongdoing, Plaintiffs have sustained loss of earnings and earning capacity, past and future lost earnings, the value of fringe and pension benefits, loss of job and career opportunities, damage to their good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to pursue employment of their choice.

## COUNT IV
### Tortious Interference with a Contractual Relationship and/or Business Expectancy (vs. Defendant Davis)

88. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 87 as though set forth in full herein.

89. Plaintiffs had an advantageous employment relationship or expectancy with Defendants.

90. Plaintiffs had a just cause employment relationship with Defendants.

91. Defendant **Davis** was aware of the aforementioned advantageous employment relationship or expectancy with Defendants and Plaintiffs' just cause employment relationship with Defendants.

92. Defendant **Davis**, without justification and acting outside the scope of her authority, intentionally and improperly interfered with Plaintiffs' advantageous employment relationship or expectancy and their just-cause employment relationship.

93. Defendant **Davis's** actions in intentionally and improperly interfering with Plaintiffs' advantageous employment relationship or expectancy and their just-cause employment relationship were done for personal motives.

94. As a direct and proximate result of Defendants' wrongdoing, Plaintiffs have sustained loss of earnings and earning capacity, past and future lost earnings, the value of fringe and pension benefits, loss of job and career opportunities, damage to their good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to pursue employment of their choice.

## COUNT V
### Defamation

95. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 94 as though set forth in full herein.

96. The statement that Plaintiffs lied during the management oversight investigation by government authorities and were terminated for lying in said investigation is false.

97. Defendant **Davis** and/or other agents of Defendants **41B District Court** and **Clinton Township** reported and published to a local newspaper and other third parties that Plaintiffs lied during a management oversight investigation by government authorities and were terminated for lying in said investigation.

98. Defendants' representations that Plaintiffs lied during a management oversight

investigation by government authorities and were terminated for lying in said investigation were false and malicious.

99. Defendants knew that the information was false or misleading.

100. Defendants published the remarks to third parties with knowledge of the falsity of the statements or in reckless disregard of truth or falsity.

101. Defendants' statements were not privileged.

102. Defendants made the false statements in order to prejudice Plaintiffs in the conduct of their business or to deter others from dealing with them.

103. Defendants' statements were defamation *per se*.

104. Defendants' defamatory statements resulted in seriously damaging Plaintiffs' reputation.

105. As a direct and proximate result of Defendants' wrongdoing, Plaintiffs have sustained loss of earnings and earning capacity, past and future lost earnings, the value of fringe and pension benefits, loss of job and career opportunities, damage to their good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to pursue employment of their choice.

## COUNT VI
### *Michigan's Whistleblower Protection Act*

106. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 105 as though set forth in full herein.

107. Plaintiffs **Englar** and **Diehl** were employees, and Defendants **41B District Court, Davis,** and **Clinton Township** their employer, within the meaning of Michigan's

Whistleblower Protection Act, Mich. Comp. Laws 15.361 *et seq*; Mich. Stat. Ann. 17.428(1) *et seq*.

108.   Defendants were aware that Plaintiffs had participated in an investigation by a public body, and had testified truthfully in said investigation.

109.   Defendants terminated Plaintiffs' employment and otherwise retaliated against them because they participated in an investigation by a public body, and for testifying truthfully in said investigation.

110.   Defendants' actions were intentional and in disregard for the rights and sensibilities of Plaintiffs.

111.   The retaliatory conduct of Defendants and their agents is a violation of Michigan's Whistleblowers' Protection Act. Mich.Comp.Laws 15.362; Mich.Stat.Ann. 17.428(2).

112.   As a direct and proximate result of Defendants' wrongdoing, Plaintiffs have sustained loss of earnings and earning capacity, past and future lost earnings, the value of fringe and pension benefits, loss of job and career opportunities, damage to their good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to pursue employment of their choice.

### COUNT VII
### Public Policy Tort

113.   Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 112 as though set forth in full herein.

114.   During the course of their employment with Defendants, Plaintiffs refused to

provide false and misleading information in a government investigation.

**115.** Plaintiffs were discharged by Defendants, as described above, for their refusal to provide false and misleading information in a government investigation.

**116.** Plaintiffs' discharge violates clearly established public policy of the State of Michigan that an employer may not condition continued employment on an employee's refusal to violate the law or retaliate against an employee attempting to comply with applicable laws.

**117.** As a direct and proximate result of Defendants' wrongdoing, Plaintiffs have sustained loss of earnings and earning capacity, past and future lost earnings, the value of fringe and pension benefits, loss of job and career opportunities, damage to their good name and reputation in the community, mental and emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to pursue employment of their choice.

## *RELIEF REQUESTED*

**Wherefore,** Plaintiffs **Nancy Englar** and **Carol Diehl** demand judgment against Defendants as follows:

    **A.** **Legal Relief:**

        1. Compensatory damages in whatever amount they are found to be entitled;

        2. Exemplary damages in whatever amount they are found to be entitled;

        3. Punitive damages in whatever amount they are found to be entitled;

        4. An award of interest, costs and reasonable attorney fees.

**B.    Equitable Relief:**

1. An order from this Court reinstating Plaintiffs to the position they would have held had there been no wrongdoing by Defendants.

2. An injunction from this Court prohibiting any further acts of retaliation against Plaintiffs.

3. An award of interest, costs and reasonable attorney fees.

4. Whatever other equitable relief appears appropriate at the time of final judgment.

DEBORAH L. GORDON, PLC

By _____
Deborah L. Gordon (P27058)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 275
Bloomfield Hills Michigan 48304
Dated: October 12, 2004    Telephone 248 258 2500

## DEMAND FOR TRIAL BY JURY

Plaintiffs **Nancy Englar** and **Carol Diehl**, by their attorneys, **Deborah L. Gordon, PLC**, demand a trial by jury of all the issues in this cause.

DEBORAH L. GORDON, PLC

By _____
Deborah L. Gordon (P27058)
Dated: October 8, 2004    Attorneys for Plaintiff

# CIVIL COVER SHEET

JS 44 (1/99)  COUNTY IN WHICH THIS ACTION AROSE: Macomb County

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**04-73977**

**I. (a) PLAINTIFFS**
NANCY ENGLAR
CAROL DIEHL

**DEFENDANTS**
41B DISTRICT COURT, and CHIEF JUDGE LINDA DAVIS of the 41B District Court at: 1 Crocker Boulevard, Mt. Clemens Michigan; CHARTER TOWNSHIP OF CLINTON at: 40700 Romeo Plank Road, Clinton Township, Michigan

(b) County of Residence of First Listed Plaintiff: Macomb County
26045
County of Residence of First Listed Defendant: Macomb County

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

(C) ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
Deborah L. Gordon (P27058)
33 Bloomfield Hills Parkway, Suite 275
Bloomfield Hills Michigan 48304
Phone 248 258 2500

ATTORNEYS (IF KNOWN)
GERALD E. ROSEN
MAGISTRATE JUDGE SCHEER

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)
- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box For Plaintiff And One Box for Defendant) (For Diversity Cases Only)

|   | PLA | DEF |   | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

POSSIBLE COMPANION CASE

CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability

TORTS — PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

TORTS — PERSONAL INJURY
- [ ] 362 Personal Injury— Med. Malpractice
- [ ] 365 Personal Injury— Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

FORFEITURE/PENALTY
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 : 881
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt. Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS — Third Party 26 USC 7609

OTHER STATUTES
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce/ICC
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions

REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

CIVIL RIGHTS
- [ ] 441 Voting
- [X] 442 Employment
- [ ] 443 Housing/Accommodations
- [ ] 444 Welfare
- [ ] 440 Other Civil Rights

PRISONER PETITIONS
- [ ] 510 Motions to Vacate Sentence
HABEAS CORPUS:
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity)
Retaliatory discharge in violation of 42 USC §1983, and the First and Fourteenth Amendments to the United States Constitution.

**COMPLAINT:** UNDER F.R.C.P. 23
**JURY DEMAND:** [X] YES  [ ] NO

**VIII. RELATED CASE(S)** (See instructions) Barachkov v. 41B District Court et al
**IF ANY** JUDGE Paul D. Borman  DOCKET NUMBER 04-73957

**DATE** October 11, 2004
**SIGNATURE OF ATTORNEY OF RECORD** X [signature]

PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed?  ☐ Yes  ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)  ☒ Yes  ☐ No

   If yes, give the following information:

   Court: Eastern District of Michigan

   Case No.: 04-73957

   Judge: Paul D. Borman

   Notes:
   Companion case is currently pending.