UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY ENGLAR, et al.,

       Plaintiffs,                        Civil Action No.
                                                      04-CV-73977

vs.

                                                        PAUL D. BORMAN
41B DISTRICT COURT, et al.,            UNITED STATES DISTRICT JUDGE

       Defendants.
_____/

**OPINION AND ORDER DENYING (1) NONPARTY WILLIAM CANNON'S MOTION TO QUASH SUBPOENA AND (2) PLAINTIFFS' MOTION TO QUASH SUBPOENA**

**I.  INTRODUCTION**

       This is a civil rights case.  Plaintiffs Patricia Barachkov, Nancy Englar, and Carol Diehl (collectively, "Plaintiffs"), all of whom are former employees of the 41B District Court in Clinton Township, Michigan, claim that they were terminated from their respective positions at the court in retaliation for statements made during a management oversight review conducted by the Michigan State Court Administrative Office.  Plaintiffs are suing the 41B District Court and its then-Chief Judge, Linda Davis.  The following claims remain:

       Count II:       42 U.S.C. § 1983: Procedural Due Process

       Count III:      Wrongful Discharge/Breach of Implied Contract and Legitimate Expectations

       Count IV:      Tortious Interference with a Contractual Relationship/Business Expectancy

       Count V:      Defamation

       Count VI:      Michigan Whistleblower Protection Act

       Count VII:    Public Policy Tort

On September 22, 2006, the Court issued an order granting summary judgment in favor of Defendants on the federal claims, Counts I and II, and dismissing without prejudice the state law claims, Counts III through VII. *See* docket entry 71. Specifically, the Court found that the 41B District Court and Clinton Township were entitled to sovereign immunity and that Plaintiffs had failed to demonstrate constitutional violations under the First or Fourteenth Amendments. Plaintiffs appealed the Court's judgment to the United States Court of Appeals for the Sixth Circuit.

On February 20, 2009, the Sixth Circuit issued an opinion in which it (1) remanded the sovereign immunity issue for further proceedings, (2) affirmed the grant of summary judgment in favor of Defendants on Plaintiffs' First Amendment claim, (3) reversed the grant of summary judgment in favor of Defendants on Plaintiffs' Fourteenth Amendment claim and remanded the claim for further proceedings, and (4) reversed the grant of summary judgment in favor of Defendants on Plaintiffs' claim for prospective injunctive relief against Judge Davis in her official capacity and remanded the claim for further proceedings. *See Barachkov v. 41B Dist. Court*, 311 Fed. App'x 863 (6th Cir. 2009) (unpublished).

Now before the Court are two motions to quash a subpoena that has been served upon a nonparty to this action, Judge William Cannon [docket entries 83 and 90]. The first motion was filed by Plaintiffs. The second motion was filed by Judge Cannon. In addition to his request that the Court quash the subpoena, Judge Cannon seeks a protective order pursuant to Fed. R. Civ. P. 26(c). Defendant Davis has filed responses to both motions. The Court heard oral argument on October 22, 2009. For the reasons that follow, the Court will deny the motions; the subpoena will be enforced.

## II. BACKGROUND

The detailed background of this case has been summarized in the Court's September 22, 2006, order, and in the Sixth Circuit's opinion. *See* docket entry 71; *Barachkov*, 311 Fed. App'x at 865-866. For the purposes of the present two motions, the following facts are relevant. Defendants first attempted to depose Judge Cannon on February 22, 2006, at which time Judge Cannon asserted his Fifth Amendment right against self-incrimination and refused to answer any questions. *See* Judge Davis' Answer at Ex. 3. Defendants had filed their motion for summary judgment approximately three weeks earlier, on February 2, 2006, but Plaintiffs had not yet filed a response.

Plaintiffs filed their response to Defendants' motion for summary judgment on March 7, 2006. Plaintiffs' response contained two affidavits from the formerly non-testifying Judge Cannon, one dated February 24, 2006, and the other dated March 1, 2006. These affidavits fully supported Plaintiff's case. By so testifying in the affidavits, Judge Cannon waived his Fifth Amendment right against self-incrimination.

Because Judge Cannon waived his rights under the Fifth Amendment, Defendants noticed Judge Cannon for a deposition to take place on March 17, 2006. *See id.* at Ex. 5. Judge Cannon appeared at the deposition with counsel and answered questions relating, in part, to his affidavit testimony. The deposition did not provide defense counsel with an opportunity to conclude their examination. Indeed, at the request of Plaintiffs' counsel, and to accommodate her schedule, counsel for Defendants agreed to terminate the deposition prematurely with the understanding that it would be concluded subsequently. Judge Cannon's deposition has yet to be reconvened. Further, because the Court granted Defendants' motion for summary judgment on September 22, 2006, there was no reason to reconvene after that ruling. Now there most certainly is a reason to reconvene the

deposition to conclusion.

On February 20, 2009, the Sixth Circuit issued its opinion, discussed above, affirming in part and reversing and remanding in part the Court's September 22, 2006, order. Of particular importance for the present purposes is the Sixth Circuit's holding with respect to Plaintiffs' Fourteenth Amendment procedural due process claim. *See Barachkov*, 311 Fed. App'x at 871-872. The court stated, in relevant part, that

> there exists a direct conflict in the evidence regarding the exact contours of the termination policy—if any existed—employed by Judge Cannon, and whether such a policy was ever communicated to, and understood by, all of his employees. This is a genuine issue of material fact which requires further development of the record and cannot be properly resolved on summary judgment. As such, the district court erred in dismissing Appellants' procedural due process claims.

*Id.* at 872.

Following the Sixth Circuit's decision, Defendants re-subpoenaed Judge Cannon to reconvene the deposition on August 26, 2009. *See* Davis Mot. at Ex. A. The subpoena also commands that Judge Cannon bring certain documents with him to the deposition. *See id.* It is this subpoena that is the subject of the present two motions.

### III. ANALYSIS

#### A. The Position of Plaintiffs and Judge Cannon

Plaintiffs ask the Court to quash the instant subpoena for four independent reasons. First, Plaintiffs state that discovery in this matter closed years ago and that Defendants are not entitled to depose Judge Cannon again because they have neither sought nor been granted an extension of discovery.

Second, Plaintiffs argue that Defendants should not be permitted to depose Judge Cannon

again because they have already had two opportunities to depose him, once on February 22, 2006, and again on March 17, 2006.

Third, Plaintiffs contend that another deposition of Judge Cannon "will do nothing to resolve issues before trial" because the Sixth Circuit has determined that factual questions exist requiring a trial.

Fourth, Plaintiffs argue that the subpoena should be quashed because Judge Cannon is in very poor health. Judge Cannon, in his separate motion, asks the Court to quash the subpoena and issue a protective order on this basis alone and does not advance any additional arguments.

Plaintiffs also argue that Judge Cannon is not required to produce the documents requested by Defendants because "they are basic items that could have been requested long ago."

With regard to the first argument, Plaintiffs cite Fed. R. Civ. P. 16(b)(4), which states that a scheduling order "may be modified only for good cause and with the judge's consent." Plaintiffs note that the discovery cut-off date in this case was January 20, 2006. *See* docket entry 39. "That being the case, discovery closed over three years ago" and because "Defendants have never moved to alter the final scheduling order entered by the District Court to allow additional time for discovery," Plaintiffs contend that Defendants are not entitled to re-take Judge Cannon's deposition. Plaintiffs cite *Rouse v. Farmers State Bank of Jewell, Iowa*, 866 F. Supp. 1191, 1198 (N.D. Iowa 1994) (stating that scheduling orders "and their enforcement are regarded as the essential mechanism for cases becoming trial-ready in an efficient, just, and certain manner"), and *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp.2d 618, 631-632 (D. Md. 2003) (quoting cases for the proposition that "a court's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril'"), in support of their position.

Moreover, Plaintiffs state that "[e]ven if Defendants had filed the proper motion to extend discovery, this Court could not justify granting it." As stated by the Eighth Circuit and quoted with approval by the Sixth Circuit in *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002), "[t]he primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). Plaintiffs contend that Defendants have not been diligent in seeking the discovery now sought. According to Plaintiffs,

> Defendants had two opportunities to question Judge Cannon, and they had unfettered opportunity to approach the Court for another extension of discovery if necessary. And, in addition to seeking to depose Judge Cannon for a third time, these Defendants are now seeking such basic items as documents "containing terms and conditions of employment for" Plaintiffs. If Defendants believed Judge Cannon had such documents, they could and should have subpoenaed them in the first 10 months the case was filed (i.e., the original discovery period), *or* in the two months of the first discovery extension, *or* in the three months of the second discovery extension.

Pls.' Mot. at 4 (emphasis in original).

Plaintiffs do not expand in any meaningful manner on their second and third arguments. Plaintiffs do, however, provide details in support of their fourth argument regarding Judge Cannon's health.

Fed. R. Civ. P. 45(c)(3)(A) states that "the issuing court must quash . . . a subpoena that: . . . (iv) subjects a person to undue burden." Plaintiffs and Judge Cannon argue that the Court should quash the subpoena on this basis because of Judge Cannon's health. Attached to Plaintiffs' motion is the affidavit of Judge Cannon's wife, Peggy Cannon, dated August 11, 2009, which states, in pertinent part, as follows:

> 3.     [Judge Cannon] is bed-ridden most all day, and cannot get up without physical assistance. He cannot walk unassisted.

    4.      He has been in the emergency room six times in six months for falls, each time involving head injuries. He received stitches three of the six times.

    5.      The latest fall occurred on May 5, 2009. Bill fainted and injured his head, hitting it on concrete in a fall from several feet in the air. He was unconscious for several minutes.

    6.      He was hospitalized for a week, then in a nursing facility for two weeks. Since that time, he has received consistent care from a home nurse and/or physical therapist.

    7.      From that time on, his memory and thought process have been disturbed.

    8.      I cannot carry on a normal conversation with him.

    9.      He cannot respond to my queries.

    10.    His driver's licence has been revoked.

    11.    He has been removed from all pending legal matters for which he was counsel.

    12.    [He] has been on numerous drugs, including drugs for dementia. These drugs cause him to sleep almost all day.

    13.    I have to prompt him to eat, use the bathroom, take medicines, etc.

Pls.' Mot. at Ex. B.

Plaintiffs also attach a letter from two of Judge Cannon's doctors, Drs. Cichowlas and Benenati. *See id.* at Ex. C. The letters are dated July 14, 2009, and March 25, 2009, respectively. The letter from Dr. Cichowlas supports and supplements the matters to which Peggy Cannon testified in her affidavit. The letter from Dr. Benenati discusses Judge Cannon's foot problems and states, in part, that he "would not recommend that Mr. Cannon undergo the stress of court." *See id.*

Judge Cannon also attaches to his motion documentation regarding his present health

condition but this documentation is duplicative of the documentation attached to Plaintiffs' motion.[1]

Relying on *N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005), for the proposition that "non-party status is also relevant in considering . . . [undue] burden," Judge Cannon argues that the fact that he is a nonparty to this action weighs in favor of quashing the subpoena.

Judge Cannon also argues that he is entitled to a protective order under Fed. R. Civ. P. 26(c). Rule 26(c) authorizes a court to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Based on the medical evidence and documentation discussed above, Judge Cannon argues that the re-taking of his deposition would constitute an "undue burden."

## B. Discussion

The Court rejects the arguments of Plaintiffs and Judge Cannon and will deny the two motions to quash the subpoena, and deny Judge Cannon's motion for a protective order. Plaintiffs first argue that Defendants should be prohibited from continuing Judge Cannon's deposition because the discovery deadline has passed long ago and Defendants have failed to ask for an extension. This argument is unpersuasive because the need to continue Judge Cannon's deposition stems from recent events – events occurring after the expiration of the discovery deadline; namely, the Sixth Circuit's February 20, 2009, opinion wherein the Court of Appeals stated that

> there exists a direct conflict in the evidence regarding the exact contours of the termination policy—if any existed—employed by Judge Cannon, and whether such a policy was ever communicated to, and understood by, all of

---

[1] The only document attached to Judge Cannon's motion that is not also attached to Plaintiffs' motion is a note dated either February or March 12, 2009 (illegible) from Judge Cannon's doctor advising that Judge Cannon "will be admitted to Mt. Clemens Hospital today and transferred to nursing home for rehab." *See* Cannon Mot. at Ex. B.

> his employees. This is a genuine issue of material fact which requires further development of the record and cannot be properly resolved on summary judgment. As such, the district court erred in dismissing Appellants' procedural due process claims.

*Barachkov*, 311 Fed. App'x at 872. As the Sixth Circuit found, there are genuine issues of material fact regarding the termination policy employed by Judge Cannon himself. The Court cannot, in light of the Sixth Circuit's opinion, deny Defendants their right to explore factual issues which are now at the very heart of the case. The Court agrees with Defendant Davis that "[t]he deposition of Judge Cannon is obviously relevant and necessary to resolve the last issue of material fact, before the Court."

Moreover, the Court rejects Plaintiffs' second argument as disingenuous at best and frivolous at worst. Plaintiffs argue that Defendants should not be permitted to continue Judge Cannon's deposition because they have previously had two opportunities to depose him. This argument is perplexing. During Defendants first "opportunity" to depose Judge Cannon, he asserted his Fifth Amendment right to stay silent, refusing to answer question after question posed by defense counsel. It is ridiculous for Plaintiffs to argue that this initial session constituted an "opportunity" to depose Judge Cannon. The argument is even more surprising given the fact that Judge Cannon waived the privilege a mere *two days later* when he signed an affidavit in support of Plaintiffs' response to the then-pending summary judgment motion of Defendants.

The next opportunity that Defendants had to depose Judge Cannon occurred on March 17, 2006. However, this session ended early, at the request of *Plaintiffs'* counsel, before defense counsel had completed his examination of Judge Cannon. Moreover, out of what appears to be a gesture of professional courtesy, counsel for Defendants agreed to the adjournment in order to accommodate the schedule of Plaintiffs' counsel. In return, Plaintiffs now wish to block

Defendants' ability to finish the deposition. The Court will not allow maneuvering of this kind. To not permit the reconvening of Judge Cannon's deposition after he refused to answer questions at the first deposition, thereafter submitting two affidavits, would subvert the Court's obligation to ensure justice. So too, given that the second deposition was terminated prematurely at the request of Plaintiff's counsel.

Finally, the Court turns to the arguments of Plaintiffs and Judge Cannon regarding the latter's health. According to Wright and Miller, "[t]he decision whether to quash, modify, or condition a subpoena is within the district court's discretion." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2463.1, pp. 485-486 (3d ed. 2008). Further,

> [w]hether a subpoena subjects a witness to undue burden within the meaning of Rule 45(c)(3)(A)(iv) usually raises a question of the reasonableness of the subpoena. The determination of a subpoena's reasonableness requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it; this process of weighing a subpoena's benefits and burdens calls upon the trial court to consider whether the information is necessary and whether it is available from any other source. It obviously is a highly case specific inquiry and entails an exercise of judicial discretion.

*Id*. at pp. 501-506 (footnotes omitted). Moreover, as Judge Cannon points out, "non-party status is also relevant in considering . . . [undue] burden." *Leake*, 231 F.R.D. at 51.

In the present case, the Court finds that the benefits of compliance strongly outweigh the burdens. Again, the "process of weighing a subpoena's benefits and burdens calls upon the trial court to consider whether the information is necessary and whether it is available from any other source." Wright & Miller, *supra* at 501-506. Here, the information is critically necessary for the reasons discussed above. Namely, the Sixth Circuit found a factual dispute involving the details of the termination policy employed by Judge Cannon. Because Defendants have never had an

opportunity to fully question Judge Cannon, and in light of the Sixth Circuit's opinion, the Court finds that Defendants' ability to mount a proper and effective defense in this matter would be substantially hindered if the Court quashed the subpoena.

In addition, the Court must consider whether the information sought "is available from any other source." *See id.* Given that the factual dispute involves Judge Cannon's termination policy, he is the best, and possibly the only, source of the information. Accordingly, the benefits of enforcing the subpoena are very strong.

The only arguable burden caused by enforcing the subpoena involves Judge Cannon's health. However, the Court notes that the medical evidence in the record is not current.[2] Additionally, Dr. Cichowlas' July 14, 2009, letter states that Judge Cannon "suffers from *occasional* undeterminated memory loss." *See* Cannon Mot. at Ex. A (emphasis added). Assuming that Judge Cannon still suffers from "occasional" memory loss, an assumption that is not supported by any evidence, there is nothing preventing the parties from taking the deposition at a time when Judge Cannon is lucid. Further, the Court agrees with Defendant Davis that while Dr. Benenati's letter, which is dated March 25, 2009, states that Judge Cannon not "undergo the stress of court," "[i]t says nothing about sitting in a non-court setting for a deposition."

Defendant Davis has filed a supplemental brief in which she points out the following two facts, both of which "are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," *see* Fed. R. Evid. 201(b)(2): (1) On May 4, 2009, Judge Cannon was charged with eight counts of embezzlement and conspiracy to commit embezzlement

---

[2] As noted above, the affidavit of Judge Cannon's wife is dated August 11, 2009, while the letters from Judge Cannon's doctors are dated July 14, 2009, and March 25, 2009.

11

as an agent or trustee, *see* Davis Supp. Br. at Ex. 1 (docket sheet, *People v. William H. Cannon*, No. 2009-002024 (Macomb County Cir. Ct.)) and (2) Judge Cannon appeared in Macomb County Circuit Court and pled no contest to one count of embezzlement on September 16, 2009, *see id.* at Ex. 2 (Newspaper article from "The Macomb Daily" stating that Judge Cannon "pleaded no contest to embezzling from a trust fund of a client" and that he "appeared in court in a wheelchair"); Ex. 1 (9/16/2009 docket entry reading: "PLEA - NOLO CONTENDERE, PLACED ON RECORD TO CT 6 EMBEZZLEMENT 1000-20,000" and "CRIMINAL SENTENCING SCHEDULED").

Under Michigan law, "[t]he court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate." MCR 6.302(A). While the record in the present case does not contain the transcript of Judge Cannon's plea hearing,[3] the judge taking the plea was required to ascertain before accepting the plea that Judge Cannon was competent to understand his rights. The plea hearing took place on September 16, 2009, well after the respective dates on which the medical evidence in this case was created. Therefore, the determination of competency made at the September 16, 2009, plea hearing in effect supercedes the medical evidence submitted by Plaintiffs and Judge Cannon in this case and strongly undercuts, if not forecloses, the arguments of Plaintiffs and Judge Cannon that the latter is too ill to be deposed. Moreover, at oral argument, counsel for Judge Cannon stated that Judge Cannon would appear at his upcoming sentencing in state court.

Finally, while it is true that Judge Cannon's status as a non-party weighs in favor of quashing the subpoena, the weight gained in this regard is fully offset by the fact that Judge Cannon is a

---

[3] Defendant Davis states in her supplemental brief that she has ordered an expedited copy of the transcript.

crucial witness in this litigation who Plaintiffs contend, through Judge Cannon's affidavits, possesses highly relevant information that is unavailable through other sources.  In addition, Judge Cannon's previous "gamesmanship" in this case by initially asserting his Fifth Amendment right to refuse to answer questions, and then two days later filing two affidavits on behalf or Plaintiffs, further supports Defendant's justification for completing the deposition.

Accordingly, the Court finds that the benefits of compliance weigh heavily in favor of enforcing the subpoena.  The Court also finds that Judge Cannon is not entitled to a protective order because any burden caused by the continuation of his deposition would not be "undue."

### IV. ORDER

For the reasons stated above,

IT IS ORDERED that William Cannon's Motion to Quash Subpoena, for Protective Order and for Attorney Fees [docket entry 90] is denied.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Quash Subpoena [docket entry 83] is denied.

s/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated:  October 29, 2009

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on October 29, 2009.

                                                                             s/Denise Goodine  
                                                                             Case Manager