UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY ENGLAR, et al.,

                Plaintiffs,                Civil Action No.
                                                04-CV-73977
vs.

                                                PAUL D. BORMAN
41B DISTRICT COURT, et al.                UNITED STATES DISTRICT JUDGE

                Defendants.
_____/

### ORDER (1) GRANTING PLAINTIFFS' MOTION TO STRIKE, (2) DENYING DEFENDANTS' MOTIONS IN LIMINE, (3) ADMITTING JUDGE WILLIAM CANNON'S DEPOSITION TESTIMONY AT TRIAL, AND (4) EXCLUDING JUDGE CANNON'S AFFIDAVITS AT TRIAL

Plaintiffs Patricia Barachkov, Nancy Englar, and Carol Diehl (collectively, "Plaintiffs"), all of whom are former employees of the 41B District Court in Clinton Township, Michigan, claim that they were terminated from their respective positions at the court in retaliation for statements made during a management oversight review conducted by the Michigan State Court Administrative Office. Plaintiffs are suing the 41B District Court and its then-Chief Judge, Linda Davis. Plaintiffs have asserted the following claims:

        Count I:           Freedom of Speech and Association

        Count II:          Procedural Due Process

        Count III:        Wrongful Discharge/Breach of Implied Contract and Legitimate Expectations

        Count IV:       Tortious Interference with a Contractual Relationship/Business Expectancy

        Count V:         Defamation

1

Count VI:       Michigan Whistleblower Protection Act

Count VII:     Public Policy Tort

On September 22, 2006, the Court issued an Opinion and Order granting summary judgment in favor of Defendants on the federal claims, Counts I and II, and dismissing without prejudice the state law claims, Counts III through VII.[1] *See* Doc. No. 71. Specifically, the Court found that the 41B District Court and Clinton Township were entitled to sovereign immunity and that Plaintiffs had failed to demonstrate constitutional violations under the First or Fourteenth Amendments. Plaintiffs appealed the Court's decision to the United States Court of Appeals for the Sixth Circuit.

On February 20, 2009, the Sixth Circuit issued an opinion in which it (1) remanded the sovereign immunity issue for further proceedings, (2) affirmed the grant of summary judgment in favor of Defendants on Plaintiffs' First Amendment claim, (3) reversed the grant of summary judgment in favor of Defendants on Plaintiffs' procedural due process claims and remanded for further proceedings, and (4) reversed the grant of summary judgment in favor of Defendants on Plaintiffs' claim for prospective injunctive relief against Judge Davis in her official capacity and remanded for further proceedings. *See Barachkov v. 41B Dist. Court*, 311 F. App'x 863 (6th Cir. 2009) (unpublished).

Now before the Court are the following five motions:

(1)       Defendant 41B District Court and Charter Township of Clinton's Motion in Limine (1) to Exclude Judge Cannon's March 2006 Affidavit and (2) to Exclude Judge Cannon's Match 17, 2006 Deposition Testimony in the Event this Court Determines Judge Cannon is Incompetent to Serve as a Witness.

---

[1]All state law claims were subsequently resolved. *See Barachkov v. 41B District Court*, No. 284197 (Mich. Ct. App. Dec. 29, 2009).

<ol start="2" type="1">
<li>Motion in Limine of Defendant, Chief Judge Linda Davis, for Dismissal of Claims Re: Testimony of William Cannon</li>
</ol>

<ol start="3" type="1">
<li>Plaintiffs' Motion to Strike Motion in Limine of Defendant Davis for Dismissal of Claims Re: Testimony of William Cannon</li>
</ol>

<ol start="4" type="1">
<li>Second Motion in Limine of Defendant, Chief Judge Linda Davis, Re: Admissibility of Affidavits and Testimony of William Cannon</li>
</ol>

<ol start="5" type="1">
<li>Third Motion in Limine of Defendant, Chief Judge Linda Davis, to Preclude Admission of Evidence of Damages at Trial.</li>
</ol>

Oral argument was held on October 21, 2010. For the reasons that follow, the Court will Grant Plaintiffs' Motion to Strike and Deny all other motions.

## II. BACKGROUND

The detailed background of this case has been summarized in this Court's September 22, 2006, Opinion and Order, and in the Sixth Circuit's February 20, 2009, opinion. *See* Doc. No. 71; *Barachkov*, 311 F. App'x at 865-866. For purposes of the present motion, the following facts are relevant.

### A.

Plaintiffs are former employees of the 41B District Court in Clinton Township, Michigan, who claim that they were terminated from their respective positions at the court in retaliation for statements made during a management oversight review conducted by the Michigan State Court Administrative Office. One of the claims brought by Plaintiffs is that they were terminated in violation of the Due Process Clause of the Fourteenth Amendment. Specifically, Plaintiffs claim that they were denied procedural due process because they were terminated from their respective positions without pre- or post-termination hearings to which they believe they were constitutionally

entitled. This procedural due process claim is the only remaining federal claim in this case.[2]

The Sixth Circuit determined that this Court improperly granted summary judgment on Plaintiffs' procedural due process claim:

> there exists a direct conflict in the evidence regarding the exact contours of the termination policy—if any existed—employed by Judge Cannon, and whether such a policy was ever communicated to, and understood by, all of his employees. This is a genuine issue of material fact which requires further development of the record and cannot be properly resolved on summary judgment. As such, the district court erred in dismissing Appellants' procedural due process claims.

*Barachkov*, 311 F. App'x at 872. Thus, the nature of Judge Cannon's termination policy (i.e., whether Plaintiffs' were "at-will" versus "just-cause" employees) is a critical fact issue in this case.[3]

### B.

Judge Cannon has given testimony in this matter via his:

(1) Affidavit, dated March 1, 2006 (the "affidavit"), wherein Judge Cannon testified, in pertinent part, that it was his policy and practice, as a supervisor at the 41B District Court, "to generally provide for notice, progressive discipline and good cause for termination. . . . in accord with the policies of the Charter Township of Clinton which provided for progressive discipline and just cause for termination." Cannon Aff. of Mar. 1, 2006, at ¶ 8. Judge Cannon further testified that Charter Township of Clinton attorney, Charles Towner, told him that the court employed progressive

---

[2] The Court granted summary judgment in Defendants' favor as to Plaintiffs' other federal claim—their First Amendment retaliation claim—and that decision was affirmed by the Sixth Circuit.

[3] Plaintiffs' procedural due process claim is viable only if they can show that they had a protected property interest in continuing employment. State law controls this question. Under Michigan law, there is a rebuttable presumption that employment relationships are terminable at the will of either party. Plaintiffs' procedural due process claims fail unless Plaintiffs can overcome the presumption of "at-will" employment by showing that Judge Cannon's policies constitute a promise of just-cause employment. *See Barachkov*, 311 F. App'x at 871-872. Thus, the viability of Plaintiffs' due process claims depends upon the nature of the termination policy employed by Judge Cannon; specifically, whether Plaintiffs were "at-will" versus "just-cause" employees.

discipline and "good cause" termination. *Id.* ¶ 9.

(2)     Deposition, held on March 17, 2006 (the "2006 deposition"), wherein Judge Cannon confirmed the accuracy of his March 1, 2006, Affidavit

(3)     Deposition, held on June 9, 2010 (the "2010 deposition"), wherein Judge Cannon contradicted, in part, his affidavit and 2006 deposition testimony.

Judge Cannon's health began to decline in the time between his 2006 and 2010 depositions. The 2010 deposition was conducted from Judge Cannon's bedside.

The admissibility of Judge Cannon's above testimony was the subject of a July 8, 2010 Status Conference, in which this Court requested that each party brief their arguments as motions in limine. These motions are presently before the Court.

## III. ANALYSIS

### A. First Motion in Limine of Defendant Chief Judge Linda Davis

In her motion in limine, Defendant Linda Davis requests this Court to dismiss all Plaintiffs' remaining claims against her. *See* docket entry 101. In general, she argues that Judge Cannon's testimony is not sufficient to overcome Michigan's presumption of "at will" employment, and that the disciplinary procedure used in Clinton Township was insufficient to create a legitimate expectation of "just cause" employment. Her brief does not contain any citations to the Federal Rules of Evidence or any case law holding that a motion in limine is the appropriate vehicle for dismissal of a claim.

Plaintiffs did not respond but instead filed a Motion to Strike. *See* Doc. No. 105. Plaintiffs argue that Defendant Linda Davis's motion is improper, noting that "[t]he relief sought is dismissal of Plaintiffs' claim, not an evidentiary ruling." Pls. Mtn. to Strike at 2. Plaintiffs also state that this Court "is not at liberty to dismiss Plaintiffs' remaining claim. It did so once, and the Sixth Circuit

found that to be in error. The court of appeals found that there is a triable issue here on the remaining claim, and that cannot be resolved except by a jury." *Id*. at 2-3.

Defendant Linda Davis responded (*see* Doc. No. 106), contending that "[t]he Court of Appeals remanded for further factual development. Further factual development has been completed. . . . Based on Judge Cannon's testimony, it is now clear that there is no remaining issue of fact." Defs. Resp. at ¶ 9.

## B. Defendants' Second Motions in Limine

The Defendants filed two separate Motions in Limine[4] both seeking to exclude (1) Judge Cannon's affidavits, and (2) Judge Cannon's 2006 deposition, but only if the Court determines that he is incompetent to testify at trial.

In support of excluding Judge Cannon's affidavits, Defendant Linda Davis argues that the affidavits are contradicted by Judge Cannon's 2010 deposition. Defendant does not base her argument on any evidentiary rule or case law involving motions in limine. Instead, Defendant submits cases where affidavits were excluded at the summary judgment stage of litigation. Defendant states that "[i]t is well settled that affidavits contradicting deposition testimony cannot create a genuine issue of material fact to preclude summary judgment." Defs. Brf. at 5. Likewise, Defendants 41B District Court and Charter Township of Clinton, in their own motion, also cite cases in which courts disregard affidavits for purposes of summary judgment. *See* Defs. Brf. at 7-10. None of the Defendants cite any case law in which a motion in limine is properly construed as a motion for summary judgment.

_____

[4]*See* Second Motion in Limine by Linda Davis, Doc. No. 102, and Motion in Limine by 41B District Court and Township of Clinton, Doc. No. 103.

Defendant Linda Davis also argues that Judge Cannon's affidavits are inadmissible hearsay.[5] Defendant specifically argues that Judge Cannon's affidavits do not fit within the hearsay exception for former testimony.[6] Defendant cites *United States v. Hunt*, 521 F.3d 636 (6th Cir. 2008), in which a trial court was upheld after denying a criminal defendant's motion to admit two statements from his own affidavit. In *Hunt*, the court found the statements were not former testimony because "Writing and signing a narrative affidavit during an interview with Government officers plainly is not the same as testimony given during a hearing or deposition." *Id*. at 643. Defendant points out that "the affidavits executed by Judge Cannon were not given at a hearing or deposition, but during consultation with Plaintiffs' counsel and for the purpose of opposing Defendants' Motions for Summary Judgment." Defs. Brf. at 7-8.

In both motions, Defendants argue that Judge Cannon's 2006 deposition should be excluded if the Court determines that he is unable to testify at trial.[7] Defendants' argument anticipates that Plaintiffs will ask this Court to bar Judge Cannon's 2010 deposition testimony and live trial testimony on the basis of competency. In lieu of this testimony, Defendants argue that Plaintiffs will seek to admit only Judge Cannon's 2006 deposition at trial. According to Defendants, this would

---

[5]*See* Fed. R. Evid. 801 (defining "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). *See also* Fed. R. Evid. 802: "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."

[6]See Fed. R. Evid. 804(b)(1) (excepting from the definition of hearsay "Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition . . . if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

[7]Under Fed. R. Evid. 601, "Every person is competent to be a witness except as otherwise provided by these rules."

be improper because the 2006 deposition is hearsay and does not qualify under the former testimony exception.[8]  Defendants' argument hinges on the fact that the 2006 deposition ended prematurely, and "without the June 9, 2010, testimony, Defendant has not had a meaningful opportunity to develop Cannon's testimony by cross-examination."  Defs. Brf. at 18.

Defendants cite extensively from *In re Paducah Towing, Inc.*, 692 F.2d 412 (6th Cir. 1982), which, despite containing language helpful to Defendants' argument, is factually distinguishable. *Paducah* discusses the "predecessor in interest" portion of 804(b)(1), which is not at issue in the matter at hand, and dealt with an administrative proceeding in which the administrative law judge limited the testimony of an expert witness.  By contrast, in this case the parties mutually agreed to postpone the deposition of Judge Cannon after Defendants had cross-examined the witness for several hours.

Finally, Defendants argue that the 2006 deposition does not qualify for the former testimony exception because Judge Cannon may not qualify as an "unavailable" witness under 804(a).[9] Defendants' argument is mainly procedural, noting that Plaintiffs bear the burden of showing Judge Cannon's unavailability in the event they wish to admit the deposition testimony under an applicable hearsay exception.  *See Burns v. Clusen*, 798 F.2d 931, 937 (7th Cir. 1986) ("The burden of proving the unavailability of the witness rests upon the party offering the prior testimony."); *but see United States v. Campbell*, 845 F.2d 1374, 1377-78 (6th Cir. 1988) ("It is well established that the infirmity of an elderly witness which prevents him or her from traveling is an 'exceptional circumstance'

---

[8]*See* Fed. R. Evid. 804(b)(1) and *supra* at 8, n. 4-5.

[9]Specifically, Defendants address 804(a)(3) (lack of memory), 804(a)(4) (death, physical or mental illness or infirmity) and 804(a)(5) (inability to procure attendance by process or other reasonable means).

which justifies the use of deposition testimony at trial.").

## C. Plaintiffs' Response

Plaintiffs responded to Defendants' separate Motions in one Response.  *See* Doc. No. 108.

Plaintiffs make two general arguments:[10] (1) that Defendants had a full and meaningful opportunity

to cross examine Judge Cannon at the 2006 deposition, and (2) that the 2006 deposition is admissible

even if Defendants did not have an opportunity to finish cross examination.

Plaintiffs first argue that Defendants used the 2010 deposition to ask about "material that had

arisen in the mean time [sic] that they thought would be advantageous to discredit Cannon."  Pls.

Brf. at 10.  In other words, Plaintiffs dispute Defendants' claim that the 2006 deposition by itself is

not adequate cross examination of Judge Cannon, because the questions asked at the 2010 deposition

concerned facts that did not develop until *after* March 2006.  Plaintiffs' argument is undercut,

however, by a transcript of the attorneys' off-the-record conversation, which took place at the 2006

deposition.  During the conversation, defense counsel, Timothy Ferrand, unambiguously states that

he has more material to cover:

> MS. GORDON: If you're in this phase of the dep could we break on – this sounds like you're on a phase where you're not getting answers, there's just going to be objections placed on the record.
>
> MR. FERRAND: Well, *there's much more to it than that*, but we can break now because of your schedule, I'll do it for your schedule.
>
> . . .
>
> MS. GORDON: How much more time do you think you need Tim on the whole thing?

---

[10]Plaintiffs include in their response two arguments to exclude Judge Cannon's 2010 deposition (i.e., laches and competency).  These arguments are addressed as a separate Motion in Limine *infra* at Part D.

> MR. FERRAND: *I think I can probably get done in a couple of – in an hour and a half, maybe two hours.*

*See* Pls. Exhibit C at 1 (emphasis added). In addition, Defendants introduced eight exhibits at the 2010 deposition, including a memo dated June 30, 2004, three letters from 2004, and an employee handbook. *See* Cannon Dep., P. 202. Defense counsel cross examined Judge Cannon on each one of these exhibits. *See id.* at 279-89, 325-40, 368-74. Further, Judge Cannon refused to answer several of defense counsel's questions at the 2006 deposition, adhering to his Fifth Amendment privilege against self incrimination. *See id.* at 105, 194-98. It was therefore appropriate for defense counsel to re-ask these questions at the 2010 deposition, after Judge Cannon's criminal matters had been resolved and he could no longer invoke the Fifth Amendment.

Next, Plaintiffs argue that even if the 2006 deposition was unfinished, it is still admissible without the 2010 deposition under Fed. R. Civ. P. 32(a)[11] and Fed. R. Evid. 804(b)(1) or 807[12]. Plaintiffs cite several cases from other district courts where an unfinished deposition was allowed at trial under Fed. R. Civ. P. 32(a). *See Shanker v. Helsby*, 515 F. Supp. 871 (S.D.N.Y. 1981), *Duttle v. Bandler & Kass*, 127 F.R.D. 46 (S.D.N.Y. 1989), and *Inland Bonding Co. v. Mainland Nat. Bank of Pleasantville*, 3 F.R.D. 438 (D.N.J. 1944). These cases stand for the proposition that an *unfinished* deposition, which was impossible or impractical to complete before trial because the witness died or the parties could not agree on a mutually convenient time to reconvene, can be

---

[11]Allowing for use of depositions at trial where: "(A) The party [against whom the deposition is being offered] was present or represented at the taking of the deposition or had reasonable notice of it;" and where its use comports with the Federal Rules of Evidence, as well as Fed. R. Civ. P. 32(a)(2)-(8).

[12]Commonly referred to as the "residual exception" to hearsay, this rule allows otherwise inadmissible hearsay to be admitted if the Court determines the statement to have "circumstantial guarantees of trustworthiness[.]"

admissible.  However, they do not address the unique relief Plaintiffs are requesting, where a deposition was *completed*, albeit in two parts, and the second part was excluded while the first part was admitted.

Plaintiffs also cite *Treharne v. Callahan*, 426 F.2d 58 (3d Cir. 1970).  *Treharne* is distinguishable from the instant matter in that it dealt with the admissibility of answers to interrogatories, not deposition testimony.  *Id*. at 61.  Further, the Court notes the following:

> The new Rule 33, coupled with the 1975 revision of Rule 43(a) and the enactment of the Federal Rules of Evidence, places the analysis for admissibility of interrogatory answers squarely and exclusively under the Federal Rules of Evidence.  *The legal and analytical bases of* Treharne *have been repealed*.

*Botkin ex rel. Banes v. Metro. Life Ins. Co.*, 907 A.2d 641, 646, 2006 PA Super 243,  (Pa. Super. Ct. 2006) (emphasis added).

### D.  Plaintiffs' Motion in Limine

In their response, Plaintiffs also move to exclude Judge Cannon's 2010 deposition testimony.  Plaintiffs present two arguments: (1) the 2010 deposition is barred due to laches, and (2) that Judge Cannon was not competent to testify at the 2010 deposition, and this deposition should therefore be inadmissible at trial.

Plaintiffs argue that Defendants delayed Judge Cannon's deposition, knowing that he was not in good health, and should now be barred from admitting the 2010 deposition:

> Defendants waited over six months after this case was remanded to seek the Cannon deposition (February 20, 2009-August 26, 2009), and after the motion to quash was denied and the Court permitted the deposition, they waited nearly *another* six months, from October 29, 2009 to April 13, 2010 to re-schedule.
>
> . . .

> At the same time, however, Defendants had been put on notice through Plaintiffs' motion to quash that Cannon's health was precarious. Defendants sat on their hands and waited, while Judge Cannon's mental state deteriorated.

Pls. Brf. at 5 (emphasis in original).

Next, Plaintiffs assert, citing Federal Rules of Evidence 403, 602 and 603, that Judge Cannon could not give meaningful testimony at his 2010 deposition, and it should therefore be excluded from trial. Plaintiffs argue that "the Court will be able to conclude solely from the tape of Judge Cannon's deposition that he was flat unable to recall or respond to questions fairly." Pls. Brf. at 16.

### E. Defendants' Reply

In reply, Defendants claim that this Court's prior Opinion and Order (*see* Doc. No. 98), which stated that Defendants did not have an opportunity to "fully question" Judge Cannon in 2006, now constitutes the law of the case and therefore forecloses Plaintiffs' argument to exclude the 2006 deposition. "Under the doctrine of the law of the case, a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990). However, this doctrine "does not foreclose a court from reconsidering issues in a case previously decided by the same court[.]" *Id*. Nevertheless, the Court believes it is not necessary to reexamine the facts or issues decided in its previous Opinion and Order in ruling on the instant matter.

### F. Defendants' Third Motion In Limine

Defendants request an order excluding "any evidence of damages" from trial. Defendants argue that "the record is clear that [Plaintiffs], in fact, were terminated 'for cause,'" Defs. Brf. at 2, and should be barred from admitting evidence of anything other than nominal damages. However,

this Court previously asked for briefing only for *in limine* motions on Judge Cannon's testimony. *See* Scheduling Order, Doc. No. 100. Rulings on other evidentiary matters would be premature at this time. Further, Defendants' motion is too broad. "Orders in limine which exclude broad categories of evidence should rarely be employed." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). For these reasons, the Court will not address Defendants' Third Motion In Limine at this time.

## IV. DISCUSSION

Plaintiffs argue that the 2010 deposition should be excluded, and Defendants argue that, if the Court grants Plaintiffs' request, then the 2006 deposition should also be excluded. In addition, Defendants request dismissal of Plaintiffs' claims and exclusion of the affidavits. Each argument is addressed below.

### A. First Motion In Limine By Defendant Chief Judge Linda Davis

Defendant's request for relief – "an order dismissing this cause of action with prejudice and without costs," Defs. Brief at 20 – is misplaced and inappropriate for an *in limine* motion. In *Provident Life & Accident Ins. Co. v. Adie*, 176 F.R.D. 246 (E.D. Mich. 1997), the defendant filed a motion in limine attempting to bar the plaintiff from raising certain defenses at trial. The court denied this motion, stating:

> At this time, there is a factual question as to whether [plaintiff] had knowledge of these two defenses at the time it denied [defendant's] benefits. [Defendant's] motion in limine is not the appropriate vehicle for resolving such a factual question. . . . . If [defendant] wanted to preclude [plaintiff] from raising these defenses at trial because there was no genuine issue of material fact as to them, then he should not have filed a motion in limine on the eve of trial, but should instead have filed a summary judgment motion pursuant to Federal Rule of Civil Procedure 56.

*Id*. at 250.

Defense counsel specifically asked the Court whether the instant motion should be a motion in limine or a motion for summary judgment. Hr. Tr. at 20. The Court told defense counsel:

> So why don't you file an in limine motion, as we head toward trial, let [Plaintiffs] respond, and the Court will rule relating to Judge Cannon's testimony at trial, whether it's the pre-video testimony, whether it's the pre-video and video testimony or whatever – whatever other arguments you have to make on both sides. And at least then we'll have a grasp and have that out of the way so that when we proceed further, that will be ready[.]

Hr. Tr. at 23. Instead of presenting evidentiary arguments as to why any or all of Judge Cannon's depositions should be excluded, Defendant's motion argues that Judge Cannon's testimony does not create an issue of fact and simply titles it a "motion in limine." The Court will not entertain Defendant's arguments at this time or in the form presented, and therefore **GRANTS** Plaintiffs' Motion to Strike.

## B.  Judge Cannon's Live Testimony

As an initial matter, the Court must rule on the availability of Judge Cannon's live testimony at trial before determining the admissibility of his prior testimony in this matter. "Unavailability" is defined by Fed. R. Evid. 804(a)(4) to include witnesses who are "unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity." The Court has discretion to determine the admissibility of deposition testimony when a witness is unavailable. *Campbell*, 845 F.2d at 1378. "It is well established that the infirmity of an elderly witness which prevents him or her from traveling is an 'exceptional circumstance' which justifies the use of deposition testimony at trial." *Id*. at 1377-78. *See also* Fed. R. Civ. P.

32(a)(1) (allowing a party to depose a witness to preserve the testimony for trial "because of exceptional circumstances and in the interest of justice."). It is clear from evidence Plaintiff has previously provided, and from the Court's own review of Judge Cannon's video deposition, that his current health should bar him from traveling. Thus, Judge Cannon's current infirmity constitutes an "exceptional circumstance" that justifies the use of his previous testimony in this matter. This Court must therefore rule on the admissibility of this prior testimony.

### C. The Affidavits

At oral argument, Plaintiffs and Defendants agreed that Judge Cannon's affidavits are not admissible at trial. Indeed, the affidavits cannot qualify as "former testimony" under Fed. R. Evid. 804(b)(1) because the testimony contained in the affidavits did not take place at a hearing, as required by the rule. *Hunt*, 521 F.3d at 643 ("Writing and signing a narrative affidavit . . . plainly is not the same as testimony given during a hearing or deposition."). Thus, both parties are barred from admitting Judge Cannon's affidavit testimony at trial.

### D. The Depositions

First, the court examines the admissibility of the 2010 deposition, since the crux of Defendants' argument to exclude the 2006 deposition is based on the assumption that the 2010 deposition has been excluded.

Plaintiffs first argue that the 2010 deposition should be barred due to laches. The equitable doctrine of laches "requires showing an unreasonable delay by one party which prejudiced the other party." *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1250 (6th Cir. 1991). Laches focuses on inexcusable delay "after possession of knowledge of the facts." *Id*. The Court finds that Defendants' delay in seeking Judge Cannon's deposition

was not unreasonable, because the extent of Judge Cannon's declining health and competency as a witness was uncertain in the time after Plaintiffs' filed their Motion to Quash, and indeed, it is still being debated in the instant Motions.  Further, Plaintiffs have not suffered any prejudice, other than the prejudice caused by Defense counsel's cross examination.  The Court refuses to bar admission of the 2010 deposition on this basis.

Next, Plaintiffs argue that Judge Cannon was not competent to testify at the 2010 deposition, as evidenced by his inability to remember certain information, his inability to remember certain words, and his inability to recognize nonsensical questions.  Defendants reply that Judge Cannon's competency was previously decided by this Court and now constitutes the law of the case.

"[T]he Federal Rules of Evidence strongly disfavor barring witnesses on competency grounds due to mental incapacity."  *United States v. Phibbs*, 999 F.2d 1053, 1068 (6th Cir. 1993).  "As long as a witness appreciates his duty to tell the truth, and is minimally capable of observing, recalling, and communicating events, his testimony should come in for whatever it is worth.  It is then up to the opposing party to dispute the witness' powers of apprehension, which well may be impaired by mental illness or other factors."  *Id*. at 1070.  As the Sixth Circuit has held, Rule 601 is generally *not* a rule for excluding testimony:

> What must be remembered, and is often confused, is that "competency" is a matter of status not ability.  Thus, the only two groups of persons specifically rendered incompetent as witnesses by the Federal Rules of Evidence are judges (Rule 605) and jurors (Rule 606).  The authority of the court to control the admissibility of the testimony of persons so impaired in some manner that they cannot give meaningful testimony is to be found outside of Rule 601. For example, the judge always has the authority under Rule 403 to balance the probative value of testimony against its prejudicial effect.  Similarly, under Rule 603, the inability of a

> witness to take or comprehend an oath or affirmation will allow the judge to exclude the person's testimony. An argument can also be constructed that a person might be impaired to the point that he would not be able to satisfy the "personal knowledge" requirement of Rule 602. Again though, it is important to remember that such decisions by a trial judge to either admit or exclude testimony will only be reversed for a clear abuse of discretion.

*United States v. Ramirez*, 871 F.2d 582, 584 (6th Cir. 1989). Thus, once the Court has determined that a witness meets the minimal threshold created by Rules 601, 602 and 603, any deficiencies within that witness's testimony go to credibility, which is weighted by the jury.

The Court having viewed the 2010 video deposition of Judge Cannon in its entirety, concludes that in the totality of his testimony he was competent to testify, that his testimony is critical to the truth-seeking process a the trial, and that his occasional lapses do not render him an incompetent witness.

Accordingly, the jury will view Judge Cannon's testimony and determine his credibility as a witness. Although Judge Cannon had some lapses in memory, he was in large part coherent and competent with regard to the critical matters at issue in the instant case: the hiring, promoting and firing of Plaintiffs, the operation of the 41B District Court during his tenure, the State Court Administrative Office ("SCAO") investigation, and the employment policies of the 41B District Court.

The following highlights from the 2010 deposition support the Court's findings:

• While his eyes were closed for the most part, when tapped to take and read a paper exhibit and then testify about it, he did so. He was not asleep.

• 10:24 a.m. – He recalled Attorney General Cox, who had authorized an investigation of his court, and Assistant Attorney General King, who carried out the investigation.

• 10:25 a.m. – He recalled that he had been a judge for 28 years.

- 10:28 a.m. – He recalled that since leaving the bench he had been charged with theft or embezzlement.

- 10:29 a.m. – He remembers hiring Nancy Englar and Carol Diehl.

- 10:30 a.m. – He recalls the Supreme Court Administrative Office ("SCAO") investigation, and the termination of Englar, Diehl and Barachov.

- 10:34 a.m. – He recalls the names of the attorney with whom he practiced after leaving the bench.

- 10:40 a.m. – He recalls the name of his former associate, Tim Mucciante, whom Cannon alleges stole $1 million from him.  He also recalls the name of his ex-client Steward Rickard, whose money Cannon is alleged to have taken.

- 10:56 a.m. – He recalls that the State Judicial Tenure Commission gave him an out – if he retires, no charges would be brought against him.

With regard to the operation of the 41B District Court he recalls:

- 10:56 a.m. – demoting the Court Administrator and promoting his future wife to that position.

- 11:02 a.m. – that State Court Administrator John Ferry wanted him out, and-

- 11:28 a.m. – that Deb Green from Ferry's office came to his court in June 2004.

- 11:30 a.m. – that court employees often moved furniture at his house during lunchtime.

- 11:42 a.m. – that a lot of people don't show up for work in his opinion.

- 11:44 a.m. – that court employees performed errands for him and his wife, including: picking up dry cleaning, gassing up, washing, and repairing his car, and (11:46 a.m.) taking the dog to the groomer, grocery shopping for incidentals, and (11:50 a.m.) balancing his checkbook.

- Noon – that Plaintiff Diehl was hired by Peggy as a cashier, and that she was reclassified to do substance abuse assessment that-

- 12:06 p.m. – would give her a salary increase of $13,000 even though her duties never changed.

- 12:08 p.m. – that after the State Court Administrator came, Cannon reassigned Diehl back into her old job.

- 12:09 p.m. – that he did this reassignment, reclassification with four or five other employees.

- 12:11 p.m. – this included Jan Kenny, promoted from clerk to probation officer, but who never worked for the probation department.

- 12:13 p.m. – That he increased her pay because she was handling the dog, but-

- 12:14 p.m. – when the SCAO came in, he reclassified her back.

Later in the deposition he recalled the name of the Clinton Township Attorney that he worked with regarding the employee handbook/discipline policy – Chuck Towner.

Cannon also testified regarding the "at will"/just cause issue regarding court employees:

- 1:49 p.m. – that he thought there was a "gray line" whether they were at will.

- 1:53 p.m. – that the SCAO told him they were at-will employees.

Further, upon examination by Plaintiffs' attorney near the end of his deposition, Ms. Prescott put forth names of items and people, and then asked Judge Cannon questions testing his memory; Judge Cannon did respond correctly to many of those questions.

Plaintiffs' counsel, at 2:04 p.m., described three items: carton, book and door, and then proceeded to ask other questions, and then came back to test Cannon by questioning what the three items were. Cannon identified two of the three – carton and book.

Judge Cannon responded to Plaintiffs' questions regarding the names of female employees involved in the case:

- 2:04 p.m. – "Carol?" "She got a pay increase."

- 2:05 p.m. – "Jan?" "She worked for the Court – dog lover."

At 2:06 p.m., Plaintiffs' counsel threw out a trick name – her name: "Sarah?" Witness Cannon answered, "no" – he recognized that there was no Sarah involved with the District Court. Then,

Plaintiffs' attorney asked him to repeat the three items she had mentioned at 2:04 p.m. – carton, book, door. Witness recalled two of the three – carton and book.

Finally, after four more minutes of intentional nonsensical questioning by Plaintiffs' attorney – what she described at the Court hearing on October 21, 2010, as "gibberish" – she asked Cannon at 2:11 p.m. to recall the three words. He stated, "carpet and box" – not correct, but close to carton and book.

The Court concludes that Judge Cannon comprehended his obligation to answer questions truthfully, and sufficiently understood the facts pertinent to this case at his 2010 deposition. *See United States v. Howard*, 124 Fed. App'x. 415, 420 (6th Cir. 2005) (noting "that the threshold of Rule 602 is low and . . . testimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about." (Citations omitted)). Thus, Judge Cannon met the minimum standard of witness competency at his 2010 deposition.

The Court concludes that, viewing the video deposition testimony in its entirety, Judge Cannon's depositions of 2006 and 2010 are admissible evidence at the trial.


## V. CONCLUSION

For the reasons stated above, the Court will:


1. **GRANT** Plaintiffs' Motion to Strike;

2. **DENY** Defendants' Motions in Limine

3. **ORDER** that Judge William Cannon's deposition testimony be admitted at trial; and

4.  **ORDER** that Judge William Cannon's affidavits will be excluded at trial.


SO ORDERED.




S/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  December 3, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on December 3, 2010.


S/Denise Goodine_____
Case Manager